TRESTON EISSENS, Individually and for Others Similarly Situated

v.

METALSA-ROANOKE, INC.

**Case No.** 7:26-CV-00054

Jury Trial Demanded

FLSA Collective Action
Rule 23 Class Action

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

January 20, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Erica Jones**
DEPUTY CLERK

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Treston Eissens (Eissens) bring this class and collective action to recover unpaid wages and other damages from Metalsa-Roanoke, Inc. (Metalsa).

2. Eissens worked for Metalsa in Roanoke, Virginia.

3. Eissens and the other Hourly Employees (defined below) regularly work more than forty (40) hours in a workweek.

4. Metalsa pays Eissens and the other Hourly Employees by the hour.

5. But Metalsa does not pay them for all the hours they work.

6. Instead, Metalsa automatically rounds Eissens's and the other Hourly Employees' hours to reflect only their prescheduled shifts for its own primary benefit (Metalsa's "rounding policy").

7. Additionally, Metalsa pays Eissens and the other Hourly Employees non-discretionary bonuses that it excludes from their regular rates of pay for overtime purposes (Metalsa's "bonus pay scheme").

8. Metalsa's rounding policy and bonus pay scheme violate the Virginia Overtime Wage Act (VOWA) and Fair Labor Standards Act (FLSA) by depriving Eissens and the other Hourly Employees of overtime wages at the required rates for all overtime hours worked.

1

9. Likewise, Metalsa's rounding policy violates the Virginia Wage Payment Act (VWPA) by depriving Eissens and the other Hourly Employees of earned wages at their agreed hourly rates for all hours worked.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Metalsa based on its substantial contacts with and business done in Virginia, including registering to do business in Virginia, employing over two-hundred (200) employees in Virginia, and owning and operating a structural automotive parts facility in Virginia.

13. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in and around Roanoke, Virginia, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

## PARTIES

14. Eissens worked for Metalsa as a line and machine operator from approximately May 2023 until March 2024.

15. Throughout his employment, Metalsa classified Eissens as non-exempt and paid him by the hour.

16. Throughout his employment, Metalsa subjected Eissens to its rounding policy and bonus pay scheme.

17. Eissens brings this action on behalf of himself and the other similarly situated Metalsa employees.

18. The putative FLSA collective is defined as:

**All hourly employees who worked under Metalsa's bonus pay scheme and/or rounding policy in Virginia at any time during the past 3 years through final resolution of this action ("FLSA Collective Members").**

19. The putative Virginia class is defined as:

**All hourly employees in Virginia who worked under Metalsa's bonus pay scheme and/or rounding policy at any time during the past 3 years through final resolution of this action ("Virginia Class Members").**

20. The FLSA Collective Members and Virginia Class Members are collectively referred to as the "Hourly Employees."

21. Metalsa is a Delaware corporation that maintains its principal place of business in Novi, Michigan.

22. Metalsa may be served with process by serving its registered agent: **Woods Rogers Business Services, LLC, 500 World Trade Ctr., 101 W. Main St., Norfolk, Virginia 23510**.

### COVERAGE UNDER THE FLSA

23. At all relevant times, Metalsa was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

24. At all relevant times, Metalsa was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

25. At all relevant times, Metalsa was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

26.     At all relevant times, Metalsa had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

27.     At all relevant times, Eissens and the other Hourly Employees were Metalsa's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

28.     At all relevant times, Eissens and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

29.     Metalsa touts itself as "a leading manufacturer of automotive components specializing in chassis structures for light and commercial vehicles."[1]

30.     To meet its business objectives, Metalsa hires and employs workers, including Eissens and the other Hourly Employees.

31.     Metalsa uniformly classifies these employees, including Eissens and the Hourly Employees, as non-exempt and pays them by the hour.

32.     While exact job titles and locations may differ, Metalsa subjects them to the same or similar practices for similar work.

33.     For example, Eissens worked for Metalsa as a line and machine operator in its Roanoke, Virginia manufacturing plant from approximately May 2023 until March 2024.

34.     Eissens's job duties included operating sandblasting machinery, ensuring product quality, and following safety procedures and protocols.

35.     Throughout his employment, Metalsa paid Eissens by the hour.

36.     Eissens typically worked 12 hours a day "on the clock" for 4 to 5 days a week (48 to 60 hours a workweek).

---

[1]https://metalsa.com/about/ (last visited January 6, 2026).

37. Like Eissens, the other Hourly Employees typically work approximately 12 hours a day for 4 to 5 days a week (48-60 hours a workweek).

38. Throughout his employment, Metalsa subjected Eissens to its rounding policy.

39. Specifically, Metalsa automatically rounded Eissens working his scheduled 12-hour shift, even when he worked more than 12 hours, which typically occurred, for its own primary benefit and to Eissens's detriment.

40. Metalsa likewise subjected the other Hourly Employees to its rounding policy.

41. Thus, under Metalsa's rounding policy, Eissens and the other Hourly Employees are denied wages for hours worked, including overtime wages for overtime hours during weeks they worked in excess of 40 hours.

42. At the end of each pay period, Eissens and the other Hourly Employees receive wages from Metalsa that are determined by common systems and methods that Metalsa selects and controls.

43. Additionally, Metalsa does not pay Eissens and the other Hourly Employees at the required premium overtime rates for hours worked in excess of 40 in a workweek.

44. Instead, Metalsa pays Eissens and the other Hourly Employees under its bonus pay scheme.

45. Specifically, Metalsa agrees to pay and subsequently pays Eissens and the other Hourly Employees non-discretionary bonuses, including performance bonuses, based on meeting Metalsa's criteria.

46. But Metalsa excludes from these non-discretionary bonuses from these employees' regular rates of pay for overtime purposes.

47. For example, during the pay period ending February 18, 2025, Metalsa paid Eissens a non-discretionary, $250 performance bonus:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 20.6600 | 72.00 | 1,487.52 | 4,388.80 |
| Overtime | 30.9900 | 12.00 | 371.88 | 1,441.04 |
| Bonus | | | 250.00 | 250.00 |
| Holiday | | | | 578.48 |
| Paid Time Off | | | | 495.84 |
| Shut Dwn Py | | | | 495.84 |
| Unused Pto | | | | 743.76 |
| Gross Pay | | | $2,109.40 | 8,393.76 |

48.     But Metalsa excluded this non-discretionary bonus from Eissen's regular rate of pay for overtime purposes.

49.     Thus, under its bonus pay scheme, Metalsa does not pay Eissens and the other Hourly Employees overtime wages at the required rates—based on all remuneration—for all hours in excess of 40 in a workweek.

50.     The Hourly Employees are thus subject to the same or similar unlawful policies— Metalsa's rounding policy and bonus pay scheme, which violate federal and Virginia law.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

51.     Eissens brings his claims as a class and collective action on behalf of himself and the other Hourly Employees.

52.     The Hourly Employees were victimized by Metalsa's rounding policy and bonus pay scheme.

53.     Other Hourly Employees worked with Eissens and indicated they were paid in the were subject to Metalsa's same or similar rounding policy and bonus pay scheme.

54.     Based on his experience with Metalsa, Eissens is aware Metalsa's rounding policy and bonus pay scheme were imposed on other Hourly Employees.

55.     The Hourly Employees are similarly situated in the most relevant respects.

56. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime.

57. Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

58. Rather, Hourly Employees are held together by Metalsa's rounding policy and bonus pay scheme, which systematically deprive them of earned wages at their agreed rates and overtime wages at the required rates for hours worked in excess of 40 in a workweek.

59. Metalsa's failure to pay all earned wages as required by the VWPA and overtime wages as required by the FLSA and VOWA results from generally applicable, systematic policies and practices not dependent on the personal circumstances of the Hourly Employees.

60. Metalsa's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

61. Likewise, Metalsa's records show the specific time the Hourly Employees punched in and out for the shifts.

62. And Metalsa's records show that it rounded the Hourly Employees recorded time punches to their prescheduled 12-hour shifts for its own primary benefit and to the detriment of the Hourly Employees.

63. Metalsa's records show it paid the Hourly Employees non-discretionary bonuses.

64. And Metalsa's records show it excluded these non-discretionary bonuses from the Hourly Employees' regular rates of pay for overtime purposes.

65. The back wages owed to Eissens and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

66. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Metalsa's records, and there is no detraction from the common nucleus of liability facts.

67. Therefore, the issue of damages does not preclude class or collective treatment.

68. Eissens's experiences are therefore typical of the experiences of the other Hourly Employees.

69. Eissens has no interest contrary to, or in conflict with, the Hourly Employees.

70. Eissens has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Virginia law.

71. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of this action.

72. Absent this class and collective action, many Hourly Employees likely will not obtain redress for their injuries, and Metalsa will reap the unjust benefits of violating the FLSA and Virginia law.

73. Further, even if some of the Hourly Employees could afford individual litigation against Metalsa, it would be unduly burdensome to the judicial system.

74. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

75. The questions of law and fact that are common to each Hourly employee predominate over any questions affecting solely the individual members.

76. Among the common questions of law and fact are:

   a. Whether Metalsa's rounding policy deprived the Hourly Employees of wages for time worked;

b. Whether Metalsa failed to pay the Hourly Employees overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock";

c. Whether Metalsa paid the Hourly Employees non-discretionary bonuses;

d. Whether Metalsa engaged in a policy or practice of failing to include non-discretionary bonuses in the Hourly Employees' regular rates of pay for overtime purposes;

e. Whether Metalsa failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

f. Whether Metalsa's decision not to pay the Hourly Employees wages for all hours worked and overtime wages for all overtime hours worked at the required rates was made in good faith; and

g. Whether Metalsa's violations were willful.

77. There are many similarly situated Hourly Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

78. This notice should be sent to the Hourly Employees pursuant to 29 U.S.C. § 216(b).

79. Those similarly situated employees are known to Metalsa, are readily identifiable, and can be located through Metalsa's business and personnel records.

**METALSA'S VIOLATIONS WERE WILLFUL**

80. Metalsa knew it was subject to the FLSA's and VOWA's overtime provisions.

81. Metalsa knew the FLSA and VOWA required it to pay employees, including the Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

82. Metalsa knew the Hourly Employees were non-exempt employees entitled to overtime wages.

83. Metalsa knew the Hourly Employees were paid by the hour.

84. Metalsa knew each Hourly Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Metalsa required these employees to record their "on the clock" hours using its timekeeping system.

85. Metalsa knew the FLSA, VOWA, and VWPA required it to pay employees, including the Hourly Employees, for all hours these employees performed compensable work.

86. Metalsa knew that, as the Hourly Employees' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that Metalsa did not want performed.

87. In other words, Metalsa knew, should have known, or recklessly disregarded the fact that it did not pay the Hourly Employees for all the hours they performed compensable work for Metalsa's predominant benefit.

88. Metalsa knew it rounded the Hourly Employees' hours worked.

89. Metalsa knew this automatic rounding primarily benefited Metalsa to the detriment of the Hourly Employees.

90. Metalsa knew it paid Eissens and the other Hourly Employees non-discretionary bonuses, including performance bonuses.

91. Metalsa knew these non-discretionary bonuses were not included in the Hourly Employees' regular rates of pay for overtime purposes.

92. And Metalsa knew the FLSA and VOWA required it to pay the Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

93. Metalsa knew the VWPA requires employers, like Metalsa, to pay the Virginia Class Members, for all the hours of work they perform at the rate(s) agreed to by the parties on their regular paydays.

94. Metalsa's decision to round the Hourly Employees' recorded work time for its benefit and their detriment under its rounding policy was neither reasonable, nor was this decision made in good faith.

95. Metalsa's decision to exclude non-discretionary bonuses from the Hourly Employees' regular rates of pay was neither reasonable, nor was this decision made in good faith.

96. Metalsa's failure to pay the Hourly Employees overtime wages for all overtime hours worked at the required rate—based on all remuneration—was neither reasonable, nor was it made in good faith.

97. Metalsa knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Eissens and the Hourly Employees of overtime wages at the required rates for all hours worked after 40 in a workweek and earned wages in violation of the FLSA and Virginia law.

98. Metalsa knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA and Virginia law.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

99. Eissens brings their FLSA claim on behalf of himself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

100. Metalsa violated, and is violating, the FLSA by employing non-exempt employees (Eissens and the FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked "off the clock."

101. Metalsa's unlawful conduct harmed Eissens and the FLSA Collective Members by depriving them of the overtime wages they are owed.

102. Accordingly, Eissens and the FLSA Collective Members are entitled to recover the difference between the wages actually paid and the overtime wages actually earned under the FLSA in an amount equal to 1.5 times their true regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

**COUNT II**

**FAILURE TO PAY OVERTIME WAGES UNDER THE VOWA**
**(VIRGINIA CLASS)**

103. Eissens brings his VOWA overtime claim on behalf of himself and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

104. Metalsa's conduct violates the VOWA. *See* VA. CODE § 40.1-29.2.

105. At all relevant times, Metalsa was subject to the VOWA because Metalsa was (and is) an "employer" within the meaning of the VOWA.

106. At all relevant times, Metalsa employed Eissens and the other Virginia Class Members as its covered "employees" within the meaning of the VOWA.

107. Eissens and the other Virginia Class Members are non-exempt employees entitled to overtime wages under the VOWA.

108. The VOWA requires employers, like Metalsa, to pay non-exempt employees, including Eissens and the other Virginia Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. VA. CODE § 40.1-29.2.

12

109. Metalsa violated, and is violating, the VOWA by failing to pay Eissens and the other Virginia Class Members overtime wages of at least 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

110. Metalsa's unlawful conduct harmed Eissens and the other Virginia Class Members by depriving them of the overtime wages they are owed.

111. Accordingly, Metalsa owes Eissens and the other Virginia Class Members the overtime wages at 1.5 times their regular rates for all hours worked over 40 in a workweek, plus an additional amount as liquidated damages. VA. CODE §§ 40.1-29(J) and 40.1-29.2.

112. Finally, Eissens and the other Virginia Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. VA. CODE § 40.1-29(J).

**COUNT III**

**FAILURE TO PAY ALL WAGES EARNED UNDER THE VWPA**
**(VIRGINIA CLASS)**

113. Eissens bring his VWPA claim on behalf of himself and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

114. Metalsa's conduct violates the VWPA (VA. CODE § 40.1-29).

115. At all relevant times, Metalsa was subject to the VWPA because Metalsa was (and is) an "employer" within the meaning of the VWPA.

116. At all relevant times, Metalsa employed Eissens and the other Virginia Class Members as its covered "employees" within the meaning of the VWPA.

117. The VWPA requires employers, like Metalsa, to pay employees, including Eissens and the other Virginia Class Members, for all the hours of work they perform at the rate(s) agreed to by the parties on their regular, established paydays. VA. CODE § 40.1-29.

118. During the course of their employment, Metalsa agreed to pay Eissens and each Virginia Class Member an hourly rate for all the hours of work they performed.

119. Eissens and each Virginia Class Member accepted Metalsa's offer.

120. But during the course of their employment, Metalsa failed to pay Eissens and the other Virginia Class Members for all the time they worked at the rates Metalsa agreed to pay them because Metalsa failed to include the time they worked "off the clock" before and after their shifts due to Metalsa's rounding policy.

121. Thus, Metalsa violated, and is violating, the VWPA by failing to pay Eissens and the other Virginia Class Members all their earned wages (at the rates Metalsa agreed to pay them) for all the hours of work they performed for Metalsa's predominant benefit.

122. Metalsa's unlawful conduct harmed Eissens and the other Virginia Class Members by depriving them of the earned wages they are owed.

123. Accordingly, Metalsa owes Eissens and the other Virginia Class Members their unpaid earned wages (at their agreed hourly rates), plus an equal amount as liquidated damages. VA. CODE § 40.1-29(J).

124. Finally, Eissens and the other Virginia Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. VA. CODE § 40.1-29(J).

## JURY DEMAND

125. Eissens demands a trial by jury on all counts.

## RELIEF SOUGHT

WHEREFORE, Eissens, individually and on behalf of the Hourly Employees, seek the following relief:

  a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Hourly Employees with instructions to permit them to assert timely FLSA

claims in this action by filing individual written consents pursuant to 29 U.S.C. § 216(b);

b. An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Eissens and his counsel to represent the interests of the Virginia Class Members;

d. An Order finding Metalsa liable to Eissens and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Metalsa liable to Eissens and the other Virginia Class Members for all their unpaid overtime wages owed under the VOWA, plus liquidated damages;

f. An Order finding Metalsa liable to Eissens and the other Virginia Class Members for all their unpaid earned wages owed under the VWPA, plus liquidated damages;

g. Judgment awarding Eissens and the other Hourly Employees all unpaid earned wages, unpaid overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, VOWA, and VWPA;

h. An Order awarding attorney's fees, costs, and expenses;

i. Pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Dated: January 20, 2026

Respectfully submitted,

**BUTLER CURWOOD, PLC**

By: */s/ Zev H. Antell*

Harris D. Butler, III VSB No. 26483
Craig J. Curwood VSB No. 43975
Zev H. Antell VSB No. 74634
Samantha R. Galina VSB No. 43975
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Phone: (804) 648-4848
Fax:     (804) 237-0413
harris@butlercurwood.com
craig@butlercurwood.com
zev@butlercurwood.com
samantha@butlercurwood.com

Michael A. Josephson*
PA ID No. 308410
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR EISSENS &
THE HOURLY EMPLOYEES**